IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TIMOTHY RUGGLES,<br>          *Plaintiff,*<br><br>    v.<br><br>VIRGINIA LINEN SERVICE, INC., AND NEW SYSTEM LINEN SERVICE, INC.<br><br>          *Defendants.* | CASE NO. 6:12-cv-00064<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  This matter is before the court on Virginia Linen Service, Inc. and New System Linen Service, Inc.'s (collectively, "Defendants") motion for summary judgment. Timothy Ruggles ("Plaintiff") alleges that he was regarded as disabled by the Defendants and terminated in violation of the Americans with Disabilities Act ("ADA"). For the following reasons, I will grant Defendants' motion for summary judgment and dismiss this action.

## I.   BACKGROUND

  This case stems from Defendants' termination of Plaintiff's employment on August 5, 2011, in alleged violation of the ADA. Plaintiff began working for Defendants as a Route Salesman in April 1992. Plaintiff states that in 1999 he was transferred to Defendants' Bedford County facility, and promoted to an Area Manager position. According to Defendants, the Bedford facility employed 10 or less employees throughout Plaintiff's employment, including two Route Representatives that delivered and picked up linens for the Company's customers.

  Plaintiff states that his primary duties as an Area Manger consisted of visiting customers, handling contracts, assisting in the management of drivers, and making special deliveries. Plaintiff states that those special deliveries consisted of bringing extra linens to customers that

1

had run short before their scheduled delivery date. Plaintiff states that those extra packs of linens rarely weighed more than 25 pounds.

Plaintiff adds that, although it was not one of his primary duties, approximately five weeks a year he would handle the routes for regular drivers (Route Representatives) when they were sick or on vacation.[1] Plaintiff states that these duties consisted of making new deliveries and picking up bags of soiled linens from customers. Plaintiff states that on occasion, those bags can weigh up to 100 pounds. Plaintiff states that both before and after his back injury, he would separate the heaviest bags of soiled linens into smaller bags in order to reduce the weight that he needed to lift. Plaintiff states that other employees used that same practice, including Phil Campbell, an Assistant General Manager at the Bedford facility. *See* Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. 3 (citing Dep. of Phil Campbell at 10:7–24 (Docket No. 19-3)).

On or about March 26, 2011, Plaintiff suffered a non-work related injury to his back and missed two days of work. Plaintiff was placed on "light duty" by his physician, Dr. Haik, until April 4, 2011, when he returned to full duty. While on light duty, Plaintiff states that he was offered and accepted assistance while covering a five-day route for a driver. However, Plaintiff states that he never asked for assistance, and had it not been offered, Plaintiff would have performed those duties on his own.[2]

On April 15, 2011, Dr. Haik placed Plaintiff on new restrictions that prevented him from lifting more than 10 pounds for four weeks. Then, on May 4, 2011, Plaintiff presented

---

[1] On the other hand, Defendants state that Plaintiff was responsible for covering around six weeks of vacation routes, 21 days of holiday routes, and at least five or six days when Route Representatives called in sick or had other emergencies, for a total of around 11 full weeks a year. Defs.' Mem. in Supp. of Mot. for S.J. 2 (citing Aff. of David Struminger ¶ 3 (Docket No. 13-2)).

[2] During the period between Plaintiff's injury and his termination, Plaintiff covered the duties of Route Representatives for seven days total. *See* Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. 2. Defendants state that, following Plaintiff's injury, to the extent that it was reasonably possible, they tried to not have Plaintiff cover for a Route Representative. Struminger Aff. ¶ 6. In all, Defendants state that they provided Plaintiff with over four months of "light duty." *See* Defs.' Reply to Pl.'s Opp. 9.

Defendants with a note from his orthopedic specialist, Dr. Huerta, stating that Plaintiff was restricted from lifting more than 50 pounds and/or continuous lifting of more than 25 pounds. Dr. Huerta's note and evaluation indicated that Plaintiff's restrictions were permanent.

Plaintiff states that on or about July 25, 2011, he was summoned by Matt Haske, Defendants' General Manager, for a meeting in his office. Mr. Campbell was also present during the meeting. Plaintiff states that he was surprised when Mr. Haske told Plaintiff that he wanted to discuss his back injury, and asked Plaintiff whether he could run a route. According to Plaintiff, he replied that running routes is "not a primary function of his position," to which Mr. Haske replied that "it's part of the gig." Plaintiff states that he was then offered a sales representative position with the Company, which he rejected. Plaintiff felt that the offer was "demeaning," Pl.'s Dep. at 64:6, and states that he didn't move his family from Richmond to Bedford in order to work in a lower-level position based on commissions and quotas. Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. 4.[3]

At this point, Mr. Haske asked Plaintiff whether he would need surgery on his back. According to Plaintiff, he replied that "at some point [surgery] may be necessary due to [his injury] being a degenerative condition but [doctors] would not consider [him] for surgery unless the condition worsened based on the slippage of the spine." Plaintiff states that he told Mr. Haske and Mr. Campbell that his orthopedic specialist "was unsure how the condition would affect him," but that it was "her belief that [Plaintiff] could live an active lifestyle." *Id.*

Plaintiff states that he had no further discussions with Mr. Haske, Mr. Campbell, or any other member of Defendants' management team about his employment status or his back condition until he was terminated, on August 5, 2011. Plaintiff states that he was not given the

---

[3] Defendants state that they valued Plaintiff as an employee, and decided to offer him the sales position because it was a position that Plaintiff had previously held with the company, and had performed well. *See* Defs.' Mem. in Supp. of Mot. for S.J. 4.

opportunity to discuss his termination with Mr. Haske or Mr. Campbell, but that he eventually called David Struminger, the Company's President, and learned that he was terminated based on the permanent restrictions that his orthopedic specialist had put in place.[4]

Plaintiff contends that, at the time of his termination, he could have performed his job without assistance or accommodation. Plaintiff alleges that at all times he met or exceeded his job requirements, and performed all of his job duties in a satisfactory manner. Plaintiff notes that less than two weeks before his termination, he received a score of 6.3 out of a possible high score of 7 on a performance evaluation. *See* Ex. D, Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. (Docket No. 19-4).

Plaintiff filed a Charge of Discrimination with the EEOC on October 7, 2011. In that Charge, Plaintiff stated that he "believed [he] was offered a demotion and discharged because [he] was regarded as having a disability[.]" Plaintiff stated in his deposition that he "do[es] not have a disability," Pl.'s Dep. at 62:22, and confirmed in his answers to Defendants' interrogatories that he "do[es] not have an impairment that substantially limits one or more major life activities."[5]

## II. LEGAL STANDARD

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[4] Plaintiff also indicated in his deposition that the Company "stated in [its] termination notice on one of the forms that [his termination] was due to [his] back and a disability." Pl.'s Dep. at 63:21–23.

[5] This contradicts a portion of Plaintiff's complaint, in which he alleges that he "has a physical impairment, as well as a record of physical impairment, that substantially limits one or more of his major life activities." Compl. ¶ 15. Plaintiff later clarified that, "[a]though [Plaintiff] did not have a physical or mental impairment that substantially limited one or more major life activities or a record of having such an impairment, [he] was 'disabled' under the meaning of the ADA because he was regarded as having a disability[.]" Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. 7.

4

a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

When considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts illustrating genuine issues for trial. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citation omitted). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. However, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). At the summary judgment stage, the nonmoving party must come forward with more than "'mere speculation or the building of one

inference upon another'" to resist dismissal of the action. *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)); *see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III. DISCUSSION

#### A.

Plaintiff has not submitted any direct evidence of disability discrimination in this case.[6] Thus, to survive summary judgment, Plaintiff must establish a circumstantial case under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (holding that the *McDonnell Douglas* scheme applies to claims brought under the ADA).

Under this framework, Plaintiff must first establish a prima facie case of wrongful termination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If Plaintiff "succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for Plaintiff's termination. *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). If Defendants carry this burden, Plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804); *see also Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

---

[6] Plaintiff bases his claim that Defendants regarded him as being disabled on the fact that "they stated in that [July 25, 2011] meeting that [his] back was an issue." Pl.'s Dep. at 63:14–15. Plaintiff acknowledged that no one at the Company ever said that they thought he was disabled, *id.* at 63:18, and there was nothing else that anyone ever said or did during his employment that made him feel like Defendants regarded him as disabled, *id.* at 71:23. Indeed, other than believing that Defendants regarded him as being disabled, Plaintiff did not feel that he was the victim of discrimination. *Id.* at 62–63.

A plaintiff establishes a prima facie case of wrongful discharge under the ADA[7] if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (citation omitted). To be within the protected class, the plaintiff must be disabled within the meaning of the ADA. A plaintiff is disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more [of his] major life activities . . . ; (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).

Plaintiff bases his ADA claim on his allegation that Defendants regarded him as having a disability. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

**B.**

Defendants contend that Plaintiff cannot establish that they regarded him as having a disability because they were merely honoring the restrictions imposed by Plaintiff's own medical specialist when they terminated his employment as an Area Manager. Defendants note that "an

---

[7] Congress amended the ADA in 2008 in order to expand the category of individuals who fall within its ambit. *See* ADA Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553; *see also Reynolds*, 701 F.3d at 150 ("In passing the ADAAA, Congress was concerned 'lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities.'" (quoting ADAAA, 122 Stat. at 3553)). Previously, in order to bring a "regarded as" disability claim, plaintiffs needed to submit evidence showing that their employers perceived them to be unable to work in a broad class of jobs. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). However, Congress resolved this issue with the 2008 amendments by adding the term "working" to the general definition of "major life activities." 42 U.S.C. § 12102(2)(A).

employer is entitled to rely upon the medical opinions of doctors in determining whether an employee is physically capable of performing required functions." *Webb v. Medical Facilities of Am.*, 2005 WL 3547034, at *3 (W.D. Va. Dec. 28, 2005) (citing *Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001)). By complying with the restrictions imposed by Plaintiff's medical specialist, Defendants contend that Plaintiff cannot now, as a matter of law, establish that they regarded him as disabled.

There are some key differences between this case and *Webb*. Unlike in *Webb*, which was decided at the pleading stage, Plaintiff contends that Defendants unduly relied on his lifting restrictions when they terminated his employment. *Cf.* 2005 WL 3547034, at *2 ("[P]laintiff does not indicate in any way that the defendant entertained a misconception of her ability to perform major life activities, or that such an incorrect belief influenced the defendant's decision to terminate her."). The employer in *Webb* acknowledged that the plaintiff could return to work, but would still not permit it until she presented a doctor's note without any restrictions, in accordance with company policy. *Id.* In this case, Plaintiff contends that, contrary to Defendants' assertions, he could have continued to fulfill his duties as an Area Manager by using the same techniques that he had employed before his lifting restrictions were in place. *See* Pl.'s Opp. to Defs.' Mem. in Supp. of Mot. for S.J. 3 ("Before and after his injury, [Plaintiff] would use the hand truck and/or routinely 'break up' (*i.e.*, separate the soiled linens from a heavy bag into several smaller bags that would weigh less) the bags to reduce the risk that the lifting could injure his back.").

Defendants also cite *Kemp v. Volvo Group N. Am.*, 2013 WL 275885 (W.D. Va. Jan. 24, 2013), in which Judge Wilson granted summary judgment to an employer that similarly relied on the medical restrictions imposed by a plaintiff's physician. *Id.* at *4 ("In determining whether an

employee is disabled in the first instance, an employer does not act inappropriately in relying on an employee's own objective medical evidence.") (citations omitted); *see also Webb*, 2005 WL 3547034, at *3 ("The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden.") (quoting *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003)).  The plaintiff in *Kemp* brought a failure to accommodate claim after Volvo had placed him on short-term disability before determining that he was unable to safely perform any job at the plant due to his deteriorating eyesight. *Id.* at *1.  Because the plaintiff "never indentified to Volvo during the critical time period . . . a particular vacant job he could safely perform with reasonable accommodation," the court granted Volvo summary judgment as to plaintiff's failure to accommodate claim. *Id.* at *5 (footnote omitted).

In this case, Plaintiff only claims that Defendants regarded him as being disabled, which does not entitle him to a reasonable accommodation under the ADAAA.  *See* 42 U.S.C. § 12201(h).  Furthermore, the plaintiff in *Kemp* "presented his employer with a letter that strongly suggests that he does not simply have a disability, but that he has a disability that is problematic on the shop floor at the Volvo plant." 2013 WL 275885, at *5.[8]  In this case, Dr. Huerta noted in her evaluation that Plaintiff works at Virginia Linen Service, sometimes "fills in for a driver," and "possibly ha[s] to lift linen bags up to 100 pounds." *See* Ex. 2, Defs.' Mem. in Supp. of Mot. for S.J. (Docket No. 13-2 at 49).  Dr. Huerta indicated that she thought "it would be reasonable with the spondylolisthesis to put [Plaintiff] on permanent work restrictions, with no

---

[8] That letter stated that Kemp "has a loss of peripheral vision that may pose a hazard to himself or fellow workers if working in an area that uses dangerous tools."  The letter also suggested that it would be best to place Kemp "in an area where restricted mobility is required and high impact machinery is not involved." *Id.* at *1.

9

lifting greater than 50 pounds." *Id.* However, Dr. Huerta does not specifically state that Plaintiff should no longer fill in for drivers, or that he cannot continue to work as an Area Manager.[9]

Dr. Huerta's evaluation does contain a significant degree of uncertainty as to how Plaintiff's degenerative condition may progress in the future, as well as what activities could trigger episodes of pain.[10] Dr. Huerta stated in her evaluation that, "[i]f [Plaintiff's] symptoms become more consistent then he would be referred to physical therapy, obtain an MRI of the lumbosacral spine, and possibly consider epidurals and last resort would be a lumbar fusion." *See* Ex. 2, Defs.' Mem. in Supp. of Mot. for S.J. Dr. Huerta continued, "[W]e cannot predict what the future will hold and how things will progress," and noted that Plaintiff's back pain was exacerbated when he performed CPR on a man the day before her evaluation. *Id.* Only a month earlier, Plaintiff's physician had imposed a lifting restriction of 10 pounds, *see* Ex. 2, Defs.' Mem. in Supp. of Mot. for S.J. (Docket No. 13-2 at 9), which appears to be an undisputed bar on performing the essential functions of an Area Manager without assistance, *see* 42 U.S.C. § 12111(8) (Under the ADA, a "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

However, Defendants focus on Plaintiff's permanent lifting restrictions in contending that Plaintiff was unable to fulfill the tasks of an Area Manager. "Defendant's belief that Plaintiff

---

[9] Defendants also cite *Young v. United Parcel Serv.*, 707 F.3d 437 (4th Cir. 2013), in which the Fourth Circuit held that a plaintiff's temporary lifting restrictions, "given the relatively manageable weight restriction—twenty pounds—and the short duration of the restriction," were insufficient to show that the employer mistakenly regarded her to be disabled on account of her pregnancy. *Id.* at 445. Plaintiff's lifting restrictions in this case were permanent. Furthermore, the plaintiff in *Young* filed her claim before the effective date of the 2008 amendments. *See id.* ("Young offers no evidence indicating [the defendant] believed Young's pregnancy substantially limited one or more of her major life activities."). Again, under the 2008 amendments, the statutory phrase "substantially limits" no longer requires that plaintiffs submit evidence that their employers perceived them to be unable to work in a broad class of jobs.

[10] Plaintiff appears to have acknowledged the uncertainty regarding his condition during the July 25, 2011 meeting with the Company's management. *See* Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. 4.

could no longer perform a job that required lifting in excess of Plaintiff's capabilities does not mean that Defendant regarded Plaintiff as disabled." *Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001) (citation omitted). Still, there is some evidence in this case that a 50-pound lifting restriction would not prevent Plaintiff from covering deliveries and pick-ups for Route Representatives. Plaintiff alleges that he could adhere to Dr. Huerta's restrictions by using a hand truck or by breaking up large bags of soiled linens into smaller loads, which he states was a technique that he employed before his injury. Plaintiff also notes that Mr. Campbell stated in his disposition that he tries to limit how much he lifts to "probably 40 or 50 pounds," and that when he on occasion has to run routes where the soiled linen bags weigh more than 50 pounds, he "take[s] some of it out and put[s] it in another bag." *See* Campbell Dep. at 10:7–24.[11] On the other hand, Plaintiff apparently told Dr. Huerta that he may have to lift 100 pounds while running routes. While this is a close case, I find that Plaintiff has presented sufficient evidence to establish a prima facie case of wrongful discharge.[12]

---

[11] In their reply, Defendants include an affidavit from Mr. Campbell in which he states that he hasn't covered a route in years, and that Plaintiff would have to lift bags of soiled linens weighing 100 pounds or more out of bins or other storage containers before they could be separated into lighter loads. Aff. of Phil Campbell ¶ 3 (Docket No. 20-1).

[12] In their reply, Defendants argue that Plaintiff cannot establish that they regarded him as having a disability because Plaintiff's back injury was transitory and minor. *See* Defs.' Reply to Pl.'s Opp. 3. Under the ADAAA, the "regarded as" definition of disability "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of six months or less." 42 U.S.C. § 12102(3)(B). Defendants cite Plaintiff's statement during his June 24, 2013 deposition that his back "feels fine," and Plaintiff's agreement with the statement that he "can pretty much do anything [he] want[s] as long as [he] acts [ ] intelligently when it comes to [his] back[.]" *See* Defs.' Reply to Pl.'s Mem. in Opp. 3 (citing Pl.'s Dep. at 41:14, 43:9–12). Defendants also note Plaintiff's statement in his memorandum in opposition that "at the time of his termination [he] could have performed his job without assistance or accommodation." *Id.* (citing Pl.'s Mem. in Opp. to Defs.' Mot. for S.J. 5). However, these statements reflect Plaintiff's position that he could continue to fulfill his duties as an Area Manager with his lifting restrictions in place, rather than an admission that his back condition was transitory and minor. Plaintiff explicitly states in his memorandum in opposition that his back injury "was not transitory because it has been diagnosed as being a permanent degenerative condition." Pl.'s Opp. to Defs.' Mot. for S.J. 8. Indeed, Dr. Huerta's evaluation states that "the spondylolisthesis will never resolve, so it is possible that [Plaintiff] may have episodes of pain throughout the years." *See* Ex. 2, Defs.' Mem. in Supp. of Mot. for S.J.

## C.

Once a plaintiff establishes the elements of a prima facie case, discrimination is presumed. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). To overcome that presumption, the burden shifts to the defendant to present evidence from which a reasonable fact-finder could conclude that the defendant acted based on a legitimate, non-discriminatory reason. *See Reeves*, 530 U.S. at 142. If the defendant meets this burden of production, the presumption of discrimination created by the prima facie case "drops from the case." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (citation omitted).

Defendants state that they terminated Plaintiff due to his permanent 50-pound lifting and/or 25-pound continuous lifting restrictions, because they believed such restrictions would preclude Plaintiff from adequately performing his duties covering Route Representatives. In his affidavit, Mr. Campbell states that an Area Manager is expected to cover the duties of a Route Representative for a total of around 11 full weeks each year. Campbell Aff. ¶ 2; *see also* Struminger Aff. ¶ 3. Mr. Campbell states that breaking down bags of soiled linens into lighter loads, or using a hand cart, is not practical and "would add significant time to each stop, and hours a day on the time it would take to run a route[.]" Campbell Aff. ¶ 3. Mr. Campbell adds that most customer sites would not accommodate a cart due to their narrow and crowded configurations. *Id.* at ¶ 4. Mr. Campbell also states that soiled bags are typically kept in bins at customer sites, and an employee with Plaintiff's restrictions would not be able to lift bags weighing more than 50 pounds out of those bins or storage containers before breaking them down in lighter loads. *Id.* at ¶ 3. I find that a reasonable fact-finder could conclude that Defendants have presented a legitimate, non-discriminatory reason to terminate Plaintiff's employment as an Area Manager at the Bedford facility.

The burden shifts back to Plaintiff to offer evidence that Defendants' reason for his termination was a pretext for discrimination. Here, Plaintiff need only produce sufficient evidence of the falsity of Defendants' proffered reason. *Reeves*, 530 U.S. at 146–149.[13] Plaintiff notes that Mr. Campbell stated in his deposition that he tries to limit how much he picks up to 40 or 50 pounds, and that he had broken down bags of soiled linens weighing more than 50 pounds in the past. Campbell Dep. at 10:7–24. However, Mr. Campbell also stated in his deposition that he hasn't run a route in two years. *See* Campbell Dep. at 29:13–16. Mr. Campbell states that back then, "the [Bedford] location was still relatively new, we had less staff, and the routes were much smaller." Campbell Aff. ¶ 2. Furthermore, according to Plaintiff, when directly asked by Mr. Haske whether he could run a route during their July 25, 2011 meeting, Plaintiff replied, "It's not a primary function of my position." *See* Pl.'s Aff. ¶ 9 (Docket No. 19-1).[14] Lastly, while Plaintiff received a strong performance evaluation less than two weeks before his termination, the record also shows that Defendants made several efforts to accommodate Plaintiff after his injury, including providing him with weeks of light duty as well as assistance on the only five-day route that he ran.

I find that Plaintiff has failed to produce sufficient evidence showing that Defendants' explanation for his discharge was "unworthy of credence." *Burdine*, 450 U.S. at 256. In other words, Plaintiff has failed to meet his burden of presenting evidence "that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Hill*, 354 F.3d at 285;

---

[13] Although the presumption of discrimination created by the prima facie case no longer exists at this point, the court may still consider the evidence establishing Plaintiff's prima facie case, and the reasonable inferences drawn therefrom, in determining whether Defendants' proffered explanation is pretextual and whether they in fact unlawfully discriminated. *Williams v. Staples*, 372 F.3d 662, 669 (4th Cir. 2004) (citing *Reeves*, 530 U.S. at 147–48).

[14] Plaintiff adds that he was "upset because [he] had never stated that [he] would not or could not run a route at any time prior to or during that day." *Id.*

13

*see also Ennis*, 53 F.3d at 58 ("the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination").

## IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for summary judgment, and strike Plaintiff's case from the court's active docket. An appropriate order accompanies this memorandum opinion.

The clerk of the court is hereby directed to send a certified copy of this memorandum opinion to all counsel of record.

Entered this  30th  day of August, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE